**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

E.R., BY AND THROUGH HER MOTHER, BEVERLY R.,

   Plaintiff,

v.

MT. CARMEL ACADEMY OF NEW ORLEANS, INC.,

   Defendant.

Case No. 2:20-cv-02924
Jury Demanded

# COMPLAINT

Plaintiff, by and through undersigned counsel, alleges as follows:

## PRELIMINARY STATEMENT

1. Several decades have passed since the first federal laws banning discrimination on the basis of disability. But it's still appallingly common for people with disabilities to experience blatant discrimination. This case is one example.

2. Plaintiff is a thirteen-year girl with cerebral palsy who uses a wheelchair, and Defendant is an all-girls Catholic school. The Defendant told Plaintiff's mother that it "do[es] not have the capabilities of accepting" a student in a wheelchair. In addition, despite knowing nothing about Plaintiff's academic ability, the Defendant assumed that its "academic program would be substantially difficult" for Plaintiff—apparently relying on negative stereotypes about people with disabilities.

3. This is a civil action for declaratory relief, injunctive relief, monetary damages, and punitive damages under the Rehabilitation Act, as amended, 29 U.S.C. § 701 *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*, to redress intentional

discrimination on the basis of disability.  Plaintiff also asserts state-law claims under La. Rev. Stat. §§ 46:1953, 51:2247, and La. Const. art. I, § 12.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 794, 42 U.S.C. § 12182, and 28 U.S.C. § 1367(a).

5. Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the Plaintiff's claims occurred there.

## PARTIES

6. Plaintiff, a minor child, is a person with a disability and a resident of Louisiana.

7. Plaintiff has multiple "disabilities," as defined by the Americans with Disabilities Act, 42 U.S.C. § 12102, the Rehabilitation Act, 29 U.S.C. § 705(20), and Louisiana state law, La. Rev. Stat. §§ 46:1952(2), 51:2232(3)(a).

8. Plaintiff is a "person aggrieved" under 29 U.S.C. § 794a(a)(2) and La Rev. Stat. § 46:1956(C), a person "subjected to discrimination on the basis of disability" under 42 U.S.C. § 12188(a)(1), and a "person deeming h[er]self injured" under La. Rev. Stat. § 51:2264.

9. Defendant is a New Orleans high school located at 7027 Milne Blvd., New Orleans Louisiana 70124, doing business as "Mount Carmel Academy."

10. On April 16, 2020, Defendant received a "Paycheck Protection Program" loan from the Small Business Administration in the amount of $1,000,000 to $2,000,000.  As such, Defendant is a recipient of federal funds under 29 U.S.C. § 794(a).

## FACTUAL ALLEGATIONS

11. Plaintiff is a 13 year old girl residing in Jefferson Parish with her mother.

12. Plaintiff is currently in the seventh grade and is currently applying for admission to Catholic high schools, which typically start at eighth grade.

13. Plaintiff was born premature via emergency C-Section, at 31 weeks. She spent the first six weeks of her life in a neonatal intensive care unit.

14. Due to her premature birth, Plaintiff has two conditions: spastic quadriplegic cerebral palsy (SQCP) and periventricular leukomalacia (PVL).

15. SQCP is a condition that causes the brain to send incorrect signals to the body, affecting muscle control, coordination, and voluntary movement.

16. PVL is a condition involving the death or damage and softening of the inner part of the brain that transmits information between the nerve cells and the spinal cord, as well as from one part of the brain to another.

17. Both SQCP and PVL are "disabilities," as defined by state and federal antidiscrimination laws, because they substantially limit major life activities, including (but not limited to) walking, talking, eating, and dressing oneself.

18. Plaintiff primarily uses a wheelchair for mobility, though she can use a walker for very limited periods of time.

19. Before the Covid-19 pandemic, Plaintiff was enrolled in a New Orleans-area private school for several years, where she mostly excelled, including making the Honor Roll.

20. Plaintiff excels in language skills. She recently won the French award at her school, given to the highest-performing student in French. She was also one of only 15 children

in her class accepted into a Latin program. Since the Covid-19 pandemic, she has been teaching herself Swahili.

21. Since the beginning of the Covid-19 pandemic, Plaintiff has been unable to attend her previous school in person, because she lives with her grandparents, who are at high risk of complications from Covid-19. As a result, Plaintiff has been enrolled in online home schooling, where she has excelled, earning high marks in all her classes.

22. At her previous school, Plaintiff was accompanied at school every day by an aide who helped her with daily activities, including navigating the school, carrying her materials to and from classes, carrying her lunch tray, and help her cut her food.

23. Plaintiff's mother is a graduate of Mount Carmel Academy, an all-girls Catholic high school in New Orleans, which Defendant owns and operates.

24. Plaintiff and her mother are both Catholic and both desire for Plaintiff to attend an all-girls Catholic high school, as her mother did.

25. On April 16, 2020, Mount Carmel Academy received a loan from the Small Business Administration (SBA) through the congressionally-created "Paycheck Protection Program," also known as a "PPP loan."

26. Mount Carmel received between $1,000,000 and $2,000,000 from the PPP loan.

27. This loan has not yet been paid back in full.

28. Page 4 of the SBA application to receive a PPP loan states that "All businesses receiving SBA financial assistance must agree not to discriminate in any business practice … on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations."

29. SBA regulations prohibit loan recipients from "discriminat[ing] with regard to goods, services, or accommodations offered or provided by the aided business or other enterprise, whether or not operated for profit, because of race, color, religion, sex, handicap, or national origin of a person, or fail or refuse to accept a person on a nonsegregated basis as a patient, student, visitor, guest, customer, passenger, or patron." 13 CFR § 113.3(a).

30. Mount Carmel Academy's website contains the following note at the bottom of the homepage: "*Mount Carmel Academy does not discriminate on the basis of race, color, creed, national or ethnic origin in the administration of its educational policies.*" Notably absent from this list is a commitment not to discriminate based on disability.

31. On September 28, 2020, Plaintiff's mother registered for an event called "MCA Your Way," a "customizable event for 6th and 7th grade girls," scheduled for October 24, 2020. The event is a limited open house (by reservation only, with limited capacity) on a Saturday morning for prospective students to meet current students and teachers and tour the Mount Carmel campus.

32. The same day she registered her daughter for the event, Plaintiff's mother called the Mount Carmel admissions office to advise that her daughter would be attending with a friend who would be pushing Plaintiff's wheelchair. She spoke with an admissions employee and asked that her daughter not be separated from this friend.

33. The Mount Carmel admissions employee was very friendly and said "Of course, we will be sure to keep the girls together during the tour." The employee gave no indication that a wheelchair user would have any significant difficulty navigating the campus.

34. Plaintiff's mother then mentioned to the employee that, to attend Mount Carmel as a student, her daughter would need an aide to help her with day-to-day school activities. She told the Mount Carmel admissions employee to "let me know if anyone has any questions about my daughter's need for an aide."

35. In response, the employee hesitated for a moment before saying "Hold on."

36. A few moments later, the Mount Carmel Admissions Director, Jeanne Rachuba, picked up the phone and told Plaintiff's mother that her daughter would not be "a good fit" for Mount Carmel.

37. Plaintiff's mother was taken aback and asked, "Why? Because she's in a wheelchair?"

38. Rachuba then hesitated before saying, "I'm not the right person to answer your question. I don't want to say the wrong thing. I'm going to let you talk to Sister Camille Anne."

39. Sister Camille Anne Campbell is the President of Mount Carmel Academy, the highest administrative position in the school.

40. Sister Camille Anne called Plaintiff's mother the same day and left the following message on her voicemail:

> This is Sister Camille Anne from Mount Carmel Academy. The Admissions Director asked me to give you a call about your daughter attending a function here. … I do want to tell you that we do not have the capabilities of accepting your child. She just is precious—one day perhaps I will meet her. However, we don't have the accommodations, and I do think our academic program would be substantially difficult for her. Mount Carmel today is not the Mount Carmel you and I were in—the number of buildings we have, the number of floors in the building, so many things have changed. And I'm very sad to have to say this to you, but I do believe it's best for the child.

41. This message caused enormous emotional pain and hardship to Plaintiff and her mother, because it clearly communicated that Mount Carmel Academy does not want wheelchair users to attend its school.

42. Contrary to the President's suggestion that the "number of buildings" and "number of floors" would prevent a wheelchair user from attending Mount Carmel, the school's buildings have elevators and the means to accommodate a student in a wheelchair.

43. Mount Carmel Academy has a general policy of not accepting students in wheelchairs.

44. Plaintiff's mother did not even have the opportunity to request a reasonable accommodation for her daughter in the form an aide, because Mount Carmel Academy dissuaded her from applying in the first place, based solely on her disability.

45. No one in the Mount Carmel admissions department or administration ever asked for or saw Plaintiff's grades or test scores  Nor did Mount Carmel ever conduct in an-person assessment of Plaintiff or obtain any other information relevant for admissions purposes.  Accordingly, Sister Camille Anne's comment that Mount Carmel Academy's "academic program would be substantially difficult for" Plaintiff was based purely on discriminatory animus and/or negative stereotypes about people with disabilities.

46. The Defendant, through its employees and administrative officials, intentionally discriminated against Plaintiff solely on the basis of her disability.

47. Plaintiff has suffered damages as a result of Defendant's conduct.

## FIRST CLAIM – Intentional Discrimination (Section 504)

48. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 47 of this Complaint as if fully set forth in this paragraph.

49. Defendant violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, because it is a recipient of federal funds and discriminated against Plaintiff solely on the basis of her disability.

50. Defendant refused to provide a reasonable accommodation for Plaintiff's disability and treated her less favorably because of her disability.

51. The discriminatory actions of Defendant were intentional and taken in disregard for Plaintiff's rights.

52. Plaintiff suffered injuries as a result of Defendant's conduct.

## SECOND CLAIM – Intentional Discrimination (ADA)

53. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 47 of this Complaint as if fully set forth in this paragraph.

54. Defendant violated Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, because it is a public accommodation that discriminated against Plaintiff on the basis of her disability.

55. Defendant refused to provide a reasonable accommodation for Plaintiff's disability and treated her less favorably because of her disability.

56. The discriminatory actions of Defendant were intentional and taken in disregard for Plaintiff's rights.

57. Plaintiff suffered injuries as a result of the Defendant's conduct.

### THIRD CLAIM – Intentional Discrimination (La. Rev. Stat. § 46:1953)

58. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 47 of this Complaint as if fully set forth in this paragraph.

59. Defendant violated La. Rev. Stat. § 46:1953 because it is an "educational institution" that denied a "person with a disability" the same rights "as a person who is able-bodied."

60. Defendant refused to provide a reasonable accommodation for Plaintiff's disability and treated her less favorably because of her disability.

61. The discriminatory actions of Defendant were intentional and taken in disregard for Plaintiff's rights.

62. Plaintiff suffered injuries as a result of Defendant's conduct.

### FOURTH CLAIM – Intentional Discrimination (La. Rev. Stat. § 51:2247)

63. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 47 of this Complaint as if fully set forth in this paragraph.

64. Defendant violated La. Rev. Stat. § 51:2247 because it is a "public accommodation" that "den[ied] an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, … on the grounds of … disability."

65. Defendant refused to provide a reasonable accommodation for Plaintiff's disability and treated her less favorably because of her disability.

66. The discriminatory actions of Defendant were intentional and taken in disregard for Plaintiff's rights.

67. Plaintiff suffered injuries as a result of Defendant's conduct.

## FIFTH CLAIM – Intentional Discrimination (Louisiana Constitution)

68. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 47 of this Complaint as if fully set forth in this paragraph.

69. Defendant violated article I, section 12 of the Constitution of the State of Louisiana of 1974, because it engaged in "unreasonable discrimination based on … [Plaintiff's] physical condition."

70. Defendant refused to provide a reasonable accommodation for Plaintiff's disability and treated her less favorably because of her disability.

71. The discriminatory actions of Defendant were intentional and taken in disregard for Plaintiff's rights.

72. Plaintiff suffered injuries as a result of Defendant's conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment:

1. Declaring that Defendant's conduct as set forth above violates 29 U.S.C. § 794; 42 U.S.C. § 12182; La. Rev. Stat. §§ 46:1953 and § 51:2247; and La. Const. art. I, § 12.

2. Entering an injunction directing that Defendant and its officers, directors, agents, employees and successors, and all other persons in active concert or participation with Defendant, take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct alleged herein and to prevent similar occurrences in the future;

3. Awarding compensatory damages to Plaintiff for injuries caused by Defendant's discriminatory conduct, pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12188, La. Rev. Stat. § 46:1956, La. Rev. Stat. § 51:2264, and any other applicable provisions.

4. Awarding punitive damages to Plaintiff for injuries caused by Defendant's discriminatory conduct, pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12188, La. Rev. Stat. § 46:1956, La. Rev. Stat. § 51:2264, and any other applicable provisions.

5. Awarding costs and attorney's fees to Plaintiff, pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12188, La. Rev. Stat. § 46:1956, La. Rev. Stat. § 51:2264, and any other applicable provisions;

6. Requiring that Defendant and its employees undergo remedial training on their obligations to people with disabilities under the Americans with Disabilities Act and the Rehabilitation Act; and

7. Granting such further relief as this Court may deem just and proper.

## JURY DEMAND

Consistent with Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial by jury as to every claim for which she is entitled.

Respectfully submitted,

October 26, 2020

   /s/ *Chris Edmunds*

Chris Edmunds, Counsel for Plaintiff
LBSA: 37670
Chris Edmunds Law Office
4937 Hearst St., Suite 2F
Metairie LA 70001
(504) 314-0034
chrisedmundslaw@gmail.com