## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BEVERLY R., on behalf of her minor child, E.R.,** **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  20-2924** |
| **MT. CARMEL ACADEMY OF NEW ORLEANS, INC.,** **Defendant** | **SECTION: "E" (3)** |

## ORDER AND REASONS

Before the Court is the motion of Defendant Mt. Carmel Academy of New Orleans, Inc. ("Mt. Carmel") to dismiss for lack of subject-matter jurisdiction.[1]

## BACKGROUND

This Americans with Disabilities Act ("ADA")[2] and Rehabilitation Act[3] case arises from claims of discrimination against a prospective student with disabilities when she sought admission to Mt. Carmel Academy, a Catholic high school for young women in New Orleans.[4]

Mt. Carmel received a Paycheck Protection Program loan from the United States Small Business Administration ("SBA"),[5] which obligated it to comply with federal discrimination regulations for the duration of the loan. SBA regulations provide that "recipients of financial assistance may not: (a) Discriminate with regard to goods, services, or accommodations offered or provided by the aided business or other

---

[1] R. Doc. 8. Plaintiff opposes the motion. R. Doc. 15. Mt. Carmel has filed a reply. R. Doc. 21. Plaintiff has filed a sur-reply. R. Doc. 25.

[2] 29 U.S.C. § 701 *et seq*.

[3] 42 U.S.C. § 12101 *et seq*. The Rehabilitation Act provides for private causes of action.

[4] R. Doc. 1 at ¶¶ 2-3. Plaintiff also brings state law causes of action under LA. CONST. art. I § 12 and La. Rev. Stat. §§ 46:1953 and 51:2247.

[5] R. Doc. 1 at ¶¶ 25-29. Defendant does not dispute it received an SBA Paycheck Protection Plan loan, which obliged it to comply with federal regulations for the duration of the loan. *See* 13 CFR 113.3(a).

enterprise, whether or not operated for profit, because of race, color, religion, sex, handicap, or national origin of a person, or fail or refuse to accept a person on a nonsegregated basis as a patient, student, visitor, guest, customer, passenger, or patron."[6] Plaintiff alleges Mt. Carmel received the loan on April 16, 2020.[7] Mt. Carmel does not dispute the accuracy of this date. Plaintiff alleges and Mt. Carmel agrees that the academy obtained full forgiveness of the loan on November 24, 2020.[8]

Plaintiff (sometimes identified herein as "E.R.") is a 13-year old girl living in Jefferson Parish, Louisiana.[9] Plaintiff alleges she has spastic quadriplegic cerebral palsy and periventricular leukomalacia.[10] She primarily uses a wheelchair but can walk using a walker for brief periods.[11] Mt. Carmel does not dispute any of these allegations.

On September 28, 2020, Plaintiff's mother registered E.R. for an orientation event at the academy and contacted the admissions office to discuss accommodations E.R. would need to attend the event.[12] This led to a discussion between Plaintiff's mother and Mt. Carmel's admissions director, Jeanne Rachuba, about accommodations for her daughter's "day-to-day school activities."[13] Plaintiff's mother alleges Rachuba dissuaded her daughter from applying to the academy. In a telephone conversation that day, Rachuba told Plaintiff's mother that E.R. would not be a "good fit."[14] On that same day,

---

[6] 13 C.F.R. § 113.3(a).
[7] R. Doc. 1 at 10.
[8] R. Doc. 8-1 at 11-12; R. Doc. 15 at 25. *See* Sister Camille Anne's declaration at R. Doc. 8-3 at ¶ 16.
[9] R. Doc. 1 at ¶ 11.
[10] *Id.* at ¶¶ 14-17.
[11] *Id.* at ¶ 18.
[12] *Id.* at ¶¶ 31-33.
[13] *Id.* at ¶ 34. Mt. Carmel alleges these conversations and prior communication also included discussions about Plaintiff's math and science credentials, but such allegations are not relevant to the instant 12(b)(1) motion. *See* R. Doc. 8-1.
[14] *Id.* at ¶ 36; R. Doc. 8-1 at 8. *See* Jeanne C. Rachuba's declaration at R. Doc. 8-5 at ¶ 17 ("I thus reiterated that MCA was not a good fit for E.R.").

Mt. Carmel's president, Sister Camille Anne Campbell, left Plaintiff's mother the following voice message:

> This is Sister Camille Anne from Mount Carmel Academy. The Admissions Director asked me to give you a call about your daughter attending a function here. ... I do want to tell you that we do not have the capabilities of accepting your child. She just is precious—one day perhaps I will meet her. However, we don't have the accommodations, and I do think our academic program would be substantially difficult for her. Mount Carmel today is not the Mount Carmel you and I were in—the number of buildings we have, the number of floors in the building, so many things have changed. And I'm very sad to have to say this to you, but I do believe it's best for the child.[15]

The parties agree Plaintiff did not submit an application to Mt. Carmel Academy,[16] and that the application deadline for the upcoming school year passed on December 15, 2020.[17] Plaintiff alleges Mt. Carmel has a "general policy of not accepting students in wheelchairs."[18] Plaintiff points to Mt. Carmel's non-discrimination policy on its website, which states "Mount Carmel Academy does not discriminate on the basis of race, color, creed, national or ethnic origin in the administration of its educational policies" but makes no mention of discrimination against persons with disabilities.[19] Mt. Carmel does not address these allegations. For the purposes of this motion, the allegation is deemed to be true.

Mt. Carmel invited Plaintiff to submit an application after this lawsuit was filed.[20] Plaintiff does not dispute this fact, but argues it is immaterial posturing for the sake of the instant litigation.

---

[15] *Id.* at ¶ 40. Mt. Carmel does not dispute the accuracy of the transcription of the voicemail message left by Sister Camille Anne Campbell.
[16] R. Doc. 8-1 at 16; R. Doc. 15 at 1.
[17] R. Doc. 8-4 at 7. Plaintiff does not dispute the application deadline. R. Doc. 15 at 23.
[18] R. Doc. 1 at ¶ 43.
[19] *Id.* at ¶ 30.
[20] R. Doc. 8-1 at 10; R. Doc. 15 at 6.

## LEGAL STANDARD

The instant motion is a motion to dismiss based on lack of subject-matter jurisdiction.[21] "Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."[22] A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject-matter jurisdiction.[23] Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[24] The burden of proof on a motion to dismiss under Rule 12(b)(1) is on the party asserting subject-matter jurisdiction exists.[25] In considering a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction "a court may evaluate: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[26]

The Fifth Circuit has distinguished 12(b)(1) motions between "facial attacks" and "factual attacks:"

> Simply stated, if the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands. If a defendant makes a "factual attack" upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials. In the latter case a plaintiff is also required to submit facts through some

---

[21] R. Doc. 37.

[22] *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).

[23] *See* Fed. R. Civ. P. 12(b)(1).

[24] *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted).

[25] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

[26] *Den Norske Stats v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction.[27]

In considering a 12(b)(1) challenge, "the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations."[28]

## LAW AND ANALYSIS

Mt. Carmel challenges this Court's subject-matter jurisdiction based on three arguments: (1) Plaintiff lacks standing because she has not suffered an injury-in-fact as she did not submit an application for admission; (2) Plaintiff's claims are unripe because she did not submit an application for admission; and (3) Plaintiff's claims are moot because the admission application deadline has passed and the SBA loan has been forgiven.[29] The justiciability doctrines of standing, mootness, and ripeness derive from Article III's "case or controversy" requirement.[30] The Court considers the three jurisdictional arguments in turn.

## I.      Plaintiff has standing.

Mt. Carmel argues Plaintiff failed to demonstrate she has suffered an injury-in-fact and therefore lacks constitutional standing to bring this suit because she did not submit an application to the academy.[31] Plaintiff argues she is not required to show she submitted an application because to do so would have been a futile gesture.[32]

Constitutional standing stems from Article III, which gives federal courts authority to hear cases and controversies. If a plaintiff lacks constitutional standing, the court lacks

---

[27] *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).
[28] *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). *See Lawal v. Lynch*, 156 F.Supp.3d 846 (S.D. Tex. Jan. 12, 2016) (citing *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997)).
[29] R. Doc. 8-1 at 24-25.
[30] *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714–15 (5th Cir. 2012).
[31] R. Doc. 8-1 at 13-14. It is immaterial that Plaintiff declined to submit an application after being invited to do so. The invitation to apply was not sent to Plaintiff until after she filed suit.
[32] R. Doc. 15 at 11.

subject-matter jurisdiction.[33] Constitutional standing "address[es] the question of whether a federal court may grant relief to any plaintiff given the claim asserted."[34] The "irreducible constitutional minimum of standing" contains three elements: (1) an injury-in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.[35] Mt. Carmel questions only the first element: injury-in-fact.[36] The Supreme Court has explained an injury-in-fact requires a showing of "an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or *imminent*, not conjectural or hypothetical."[37]

Generally, a plaintiff has suffered an injury-in-fact once she has suffered some actual or threatened injury as a result of the defendant's alleged conduct. This may arise from a final, unfavorable outcome following an administrative process, such as an internal disciplinary review process resulting in discipline,[38] an application process resulting in rejection,[39] or a denial of a formal request.[40] Mt. Carmel points to *Vaeth v. United States*, to argue that an application and rejection is necessary for there to be an

---

[33] *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (citing *Camreta v. Greene*, 131 S. Ct. 2020, 2028 (2011)); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citing *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).

[34] *Vitanza v. Bd. of Trade of City of N.Y.*, No. 00-7393, 2002 WL 424699, at *5 n.10 (S.D.N.Y. Mar. 18, 2002).

[35] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

[36] R. Doc. 8-1 at 14.

[37] *Bennett v. Spear*, 520 U.S. 154, 167 (1997) (emphasis added); *Lujan*, 504 U.S. at 560; *see also Spokeo*, 136 S. Ct. at 1548.

[38] *See Hole v. Texas A&M Univ.*, 2009 WL 8173385 (S.D. Tex. Feb. 10, 2009) (finding an injunction that interrupted a university's disciplinary process prevented a redressable injury-in-fact from arising).

[39] *See Bezet v. United States*, 276 F.Supp.3d 576, 598-99 (E.D. La. Mar. 17, 2017) (finding that plaintiff seeking a transfer of a firearm failed to sufficiently allege an injury-in-fact because plaintiff never applied for such a transfer); *Rancho Viejo Waste Mgmt. v. Laredo, Tex.*, 364 F.Supp.3d 698, 701-02 (S.D. Tex. Mar. 11, 2019) (finding the loss alleged to be only conjecture after the plaintiff failed to apply for a landfill permit).

[40] *See Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 382 (5th Cir. 2016) (finding plaintiff's alleged injury was "speculative, hypothetical, and lack[ing] imminence, as [plaintiff] withdrew from LIT and has repeatedly said that he will not retorn.").

injury-in-fact.[41] In *Vaeth*, the plaintiff sought a grant award from the Department of Energy ("DOE") and completed two of the three necessary application phases. After the second phase, DOE routinely encouraged or discouraged applicants to proceed with their grant applications. Discouraged applicants could nonetheless proceed to phase three and a few of those discouraged applicants were still, in fact, awarded grants. DOE formally discouraged the plaintiff from proceeding. Instead of proceeding to phase three, the plaintiff filed suit. The Court of Federal Claims found the plaintiff fell "short of the concrete and particularized injury necessary to convey Article III standing" because "he chose to forego [*sic*] the submission of a full application in the final, and requisite, phase of that program."[42]

Plaintiff argues she has standing, even though she did not submit an application to the academy, because to do so would have been a futile gesture. According to Plaintiff, Mt. Carmel's administrators have already informed Plaintiff they cannot accommodate her. Plaintiff argues her mother's conversation with Rachuba and the voicemail left by Sister Camille Anne Campbell put her on notice of the academy's discriminatory practices and dissuaded her from applying.

In *Int'l Broth. of Teamsers v. United States*, Justice Stewart explained why a "futile gesture" is not necessary for a plaintiff to successfully demonstrate an injury-in-fact:

> If an employer should announce his policy of discrimination by a sign reading "Whites Only" on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs. The same message can be communicated to potential applicants more subtly but just as clearly by an employer's actual practices by his consistent discriminatory treatment of actual applicants, by the manner in which he publicizes vacancies, his recruitment techniques, his responses to casual or tentative inquiries, and even by the racial or ethnic composition of that part of his work force from which he has

---

[41] *Vaeth v. United States*, 110 Fed.Cl. 425 (Fed. Cl. May 15, 2013).
[42] *Id.* at 431.

discriminatorily excluded members of minority groups. When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a *futile gesture* he is as much a victim of discrimination as is he who goes through the motions of submitting an application.[43]

In *Teamsters*, the Supreme Court recognized that a "well-known" policy, although unwritten, could suffice to allege discrimination.[44] There is no need to require a nonapplicant to commit "a useless act serving only to confirm a discriminatee's knowledge that the job he wanted was unavailable to him."[45] In *Ellison v. Connor*, the Fifth Circuit explained that a Plaintiff invoking a "futile gesture" exception must make a "substantial showing" that the action would have been futile.[46] In *Ellison*, the court found the plaintiffs had standing after the plaintiffs produced a letter from the defendant "specifically stating" it would deny their permit application.[47] In the instant matter, Plaintiff argues Mt. Carmel specifically told her she could not be accommodated.

Mt. Carmel's reliance on *Vaeth* is unpersuasive. In *Vaeth*, DOE had a routine policy of encouraging or discouraging applicants after the second phase of the grant process and grant applicants had the option to continue, even if formally discouraged. It would not have been a futile gesture for the *Vaeth* plaintiff to complete the third phase of the grant application because there was still a possibility of success. In the instant action, Plaintiff alleges she had no possibility for success as Plaintiff's mother had been expressly told that

---

[43] *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 365-66 (1977) (citations omitted) (emphasis added).

[44] *Id*. at 366-67.

[45] *Id*. at 367 (citing *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 451 (5th Cir. 1973).

[46] *Ellison v. Connor*, 153 F.3d 247, 255 (5th Cir. Sept. 11, 1998) ("This threshold requirement for standing may be excused, however, when a plaintiff makes a 'substantial showing that application for the benefit ... would have been futile.").

[47] *Id*. ("we recognized the futility doctrine when we found that white farmers did not have to complete an application to participate in a. . . program when. . . told that the program was closed to whites.").

Plaintiff could not be accommodated. It would have been a futile gesture for Plaintiff to submit an application.

The Court finds Plaintiff has made a substantial showing of an injury-in-fact by alleging she desired to attend Mt. Carmel Academy but was dissuaded from applying by the statements made by Rachuba and the voicemail left by Sister Camille Anne Campbell, in which the Sister said, "we don't have the accommodations. . . the number of buildings we have, the number of floors in the building, so many things have changed."[48]

## II.   Plaintiff's cause of action is ripe.

The ripeness doctrine is drawn "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."[49]   The purpose of this doctrine is to forestall "entangl[ement] . . . in abstract disagreements" through "avoidance of premature adjudication."[50] "The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"[51] A plaintiff, however, does not always "have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough."[52]

Mt. Carmel's ripeness argument largely parrots its standing argument. Mt. Carmel argues Plaintiff's claims are not ripe for adjudication because Plaintiff failed to "commence the formal process of applying to MCA prior to filing suit" and "deprived MCA

---

[48] R. Doc. 1 at ¶ 40.
[49] *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993).
[50] *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).
[51] *New Orleans Public Serv., Inc. v. Counsel of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987) (quoting *Abbott Labs.*, 387 U.S. at 149).
[52] *Penn. v. W. Va.*, 262 U.S. 553, 593 (1923).

of the opportunity to make a final determination."[53] In response, Plaintiff argues the gesture would have been futile. As explained above, the Court agrees with Plaintiff.

Mt. Carmel points to a handful of cases in which courts have found plaintiffs' claims to be unripe for failing to exhaust administrative procedures. In *Doe v. Univ. of No. Tex.*, plaintiff was a student with certain mental conditions who was suspended by his university for code of conduct violations.[54] Before the university's review of his suspension was complete, plaintiff voluntarily withdrew from the university and then filed suit. The district court dismissed the action as unripe for his failure to fully exhaust the disciplinary review process, which could have resulted in his full reinstatement as a student. In *Power ex rel. Power v. School Bd. of City of Virginia Beach*,[55] a student with ADHD brought a pellet gun to school and was expelled. This began a lengthy expulsion review process. The student's parents filed suit before a reviewing officer could make a final determination as to the student's status. The district court found the claims to be unripe because "the administrative procedures regarding [the student] are still pending" and "the reviewing officer has not issued her decision."[56] In *Kober v. Nat'l Bd. of Med. Examiners*,[57] a medical student with learning disabilities requested accommodations for his Step 1 exam. The exam administrator requested supporting documentation for his request. Instead of satisfying the administrator's request, the medical student filed suit. The district court found the claim was unripe because "a denial [had] not yet occurred."[58]

---

[53] R. Doc. 8-1 at 22.
[54] *Doe v. Univ. of No. Tex.*, 2018 WL 6495084 (E.D. Tex. Nov. 20, 2018) ("Because the review process is still pending (though abated) and no final decision has been made (or will be made unless and until Plaintiff's [*sic*] re-enrolls at UNT), Plaintiff's Rehabilitation Act claims were filed prematurely, and therefore, are not ripe.").
[55] *Power ex rel. Power v. School Bd. of City of Virginia Beach*, 276 F.Supp.2d 515 (E.D. Va. Aug. 7, 2003).
[56] *Id*. at 521.
[57] *Kober v. Nat'l Bd. of Med. Examiners*, 2010 WL 2342480 (W.D. La. June 7, 2010).
[58] *Id*. at *2.

In every case Mt. Carmel relies upon for its ripeness argument, the plaintiff's procedural exhaustion would not have been a futile gesture because he or she still had a possibility of success at the administrative level. In those cases, none of the defendants specifically stated they were going to deny the plaintiff's request and none of the defendants had well-known policies of discrimination. The Court finds Plaintiff did not need to submit an application to Mt. Carmel in order for her claim to be ripe. Plaintiff was not required to exhaust the administrative remedies by submitting an application because to do so would have been a futile gesture. To address this claim at this time will not be a premature adjudication.

### III.    Plaintiff's cause of action is not moot.

Mt. Carmel argues Plaintiff's claims are moot because (1) the deadline to apply to Mt. Carmel passed on December 15, 2020 and (2) the SBA's Payment Protection Plan loan was forgiven in full on November 24, 2020.[59]

Because Article III grants this Court the ability to only hear cases or controversies, a suit is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."[60] A party seeking dismissal on the basis of mootness bears a "heavy burden of persuasion."[61] To meet that burden a party must demonstrate that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recure [*sic*]."[62] A defendant seeking dismissal must be careful to not "confuse[] mootness with the merits."[63]

---

[59] R. Doc. 8-1 at 23-24.
[60] *Chafin v. Chafin*, 568, U.S. 165, 172 (2013) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)).
[61] *United States v. Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968).
[62] *Gwaltney v. Chesapeake Bay Foundation*, 484 U.S. 49, 66 (1987) (emphasis in original; quoting *Phosphate Export Ass'n*, 393 U.S. at 203).
[63] *Chafin*, 568 U.S. at 174.

### a)    The academy's application deadline did not render Plaintiff's claims moot.

Mt. Carmel argues Plaintiff failed to submit an application for admission by December 15, 2020 and therefore lacks a cognizable interest in the outcome of this litigation. Plaintiff argues, although "the application deadline for the eighth grade 'has now passed," "the school accepts students into the ninth, tenth, and eleventh grades."[64]

Mt. Carmel further argues that it extended a formal invitation to Plaintiff to apply in advance of the deadline. Plaintiff argues the invitation was mere posturing after the lawsuit was initiated.

In *City of Mesquite v. Aladdin's Castle, Inc.*, a city revised an ordinance held by a federal district court to be unconstitutional while the litigation was still pending on appeal.[65] The Supreme Court stated:

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power.

The Court has the power to determine the legality of Mt. Carmel's practices. Mt. Carmel has not represented it has abandoned the alleged discriminatory practice and it might reasonably be expected to recur.

### b)    The forgiveness of the SBA Payment Protection Plan after the events in question does not render Plaintiff's claims moot.

Under 13 CFR 113.3(a), "recipients of financial assistance [from the SBA] may not: (a) Discriminate with regard to goods, services, or accommodations offered or provided by the aided business or other enterprise, whether or not operated for profit, because of

---

[64] R. Doc. 15 at 23.
[65] *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288-89 (1982).

race, color, religion, sex, handicap, or national origin of a person, or fail or refuse to accept a person on a nonsegregated basis as a patient, student, visitor, guest, customer, passenger, or patron."[66]

Mt. Carmel argues it is no longer subject to Plaintiff's Rehabilitation Act claim because its Paycheck Protection Plan loan has been forgiven. In support of this argument, Mt. Carmel cites a Frequently Asked Questions page by the SBA, which states "[a]ny legal obligations that you incur through your receipt of this loan are not permanent, and once the loan is paid or forgiven, those nondiscrimination obligations will no longer apply."[67] Plaintiff agrees the loan was forgiven was forgiven on November 24, 2020, but argues the forgiveness occurred a month after the suit was initiated and two months after the discriminatory conduct in question.[68]

Mt. Carmel offers no case law or other persuasive authority supporting the premise that a Rehabilitation Act claim, made while the recipient of an SBA loan was subject to nondiscrimination obligations, is moot after the loan has been forgiven. Although Mt. Carmel might not be required to comply with Rehabilitation Act obligations after November 24, 2020—a fact Plaintiff does not dispute—it is still required to answer for claims based on conduct occurring while the loan was outstanding. The Court finds Plaintiff's Rehabilitation Act claim is not moot.

---

[66] 13 CFR 113.3(a).
[67] R. Doc. 10-1.
[68] R. Doc. 15 at 25.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Mt. Carmel Academy of New Orleans, Inc.'s 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction is **DENIED**.[69]

New Orleans, Louisiana, this 23rd day of March, 2021.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[69] R. Doc. 8. Mt. Carmel's request for oral argument is **DENIED AS MOOT**. R. Doc. 17.